SIEGMUND F. FUCHS
Senior Trial Attorney, Torts Branch
D.C. Bar No. 986828
U.S. Department of Justice
Ben Franklin Station
P.O. Box 7146
Washington, D.C.  20044-7146
Telephone: (202) 616-4322
Facsimile: (202) 616-4314
Email: siegmund.f.fuchs@usdoj.gov

Attorney for the Federal Defendants

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH JIMINEZ, individually, and as successor in interest of FERNANDO GEOVANNI LLANEZ, deceased; FERNANDO LLANEZ, individually, and as successor in interest of FERNANDO GEOVANNI LLANEZ, deceased<br><br>                                Plaintiffs,<br><br>                vs.<br><br>THE UNITED STATES OF AMERICA; RONALDO RICARDO GONZALEZ, an individual; MARCUS OSORIO, an individual; CHRIS BARONI, an individual; ANGELA SANCHEZ, an individual; MICHAEL BURBANK, an individual; JEREMY DORN, an individual; ANTHONY CASTELLANOS, an individual; MARK MEREDITH, an individual; and DOES 1-100, inclusive,<br><br>                                Defendants. | Consolidated Case Nos.:<br>    17cv1205-BTM-AGS<br>    18cv1269-BTM-AGS<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNITED STATES OF AMERICA AND RONALDO GONZALEZ'S MOTION FOR SUMMARY JUDGMENT<br><br>CTRM:   15B<br>JUDGE:   Hon. Barry Ted Moskowitz<br><br>[PER CHAMBERS, NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT] |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ...................................................................................1

I.   EVIDENCE GUIDE ........................................................................2

II.  FACTUAL BACKGROUND............................................................2

III. STANDARD OF REVIEW ..............................................................4

IV. QUALIFIED IMMUNITY STANDARD .........................................5

V.  LEGAL ANALYSIS .........................................................................6

  A.   DEFENDANT GONZALEZ IS ENTITLED TO SUMMARY JUDGMENT
      ON THE EXCESSIVE FORCE CLAIM BASED ON QUALIFIED
      IMMUNITY BECAUSE THE EVIDENCE SHOWS THAT HIS ACTIONS
      DID NOT VIOLATE A CLEARLY ESTABLISHED FOURTH
      AMENDMENT RIGHT. ................................................................6

  B.   THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT ON
      THE ASSAULT AND BATTERY CLAIM BECAUSE THE EVIDENCE
      SHOWS THAT ITS CONDUCT IS NOT ACTIONABLE UNDER
      CALIFORNIA LAW. ..................................................................11

VI. CONCLUSION.................................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Abuka v. City of El Cajon*,
  No. 17-89, 2019 U.S. Dist. LEXIS 37137 (S.D. Cal. Mar. 7, 2019) ...................11

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986) ................................................................. 4, 5, 13

*Angilau v. United States*,
  No. 16-992, 2018 U.S. Dist. LEXIS 39379 (D. Utah Mar. 9, 2018) ...................10

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) .................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................13

*Avina v. United States*,
  681 F.3d 1127 (9th Cir. 2012)........................................................12

*Behrens v. Pelletier*,
  516 U.S. 299 (1996) .................................................................13

*British Airways Bd. v. Boeing Co.*,
  585 F.2d 946 (9th Cir. 1978)..........................................................5

*Carroll v. Carman*,
  574 U.S. 13 (2014) ..................................................................11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..................................................................5

*City & Cty. of San Francisco v. Sheehan*,
  135 S. Ct. 1765 (2015) .............................................................4, 9

*Cmty. House, Inc. v. City of Boise*,
  623 F.3d 945 (9th Cir. 2010).........................................................5

*Coverdell v. Dep't of Soc. & Heath Servs.*,

  834 F.2d 758 (9th Cir. 1987) ..............................................................5

*Dasho v. City of Fed. Way*,

  No. 12-1398, 2015 U.S. Dist. LEXIS 79556 (W.D. Wash. June 17, 2015) .........10

*Del Castillo v. City of Tempe*,

  No. 14-1945, 2016 U.S. Dist. LEXIS 161037 (D. Ariz. Nov. 18, 2016)..............10

*Elliott v. Leavitt*,

  99 F.3d 640 (4th Cir. 1996)...........................................................8, 9

*Estate of Green v. City of Indianapolis*,

  420 F. Supp. 3d 816 (S.D. Ind. 2019) ....................................................10

*FDIC v. Meyer*,

  510 U.S. 471 (1994) ....................................................................12

*Glenn v. Washington Cty.*,

  673 F.3d 864 (9th Cir. 2011) ...........................................................7

*Graham v. Connor*,

  490 U.S. 386 (1989) ....................................................................7

*Hunter v. Bryant*,

  502 U.S. 224 (1991) ...................................................................13

*J.P. v City of Porterville*,

  801 F. Supp. 2d 965 (E.D. Cal. 2011)...................................................10

*Lujan v. Nat'l Wildlife Fed'n*,

  497 U.S. 871 (1990) ...................................................................13

*Malley v. Briggs*,

  475 U.S. 335 (1986) ....................................................................5

*Mitchell v. Forsyth*,

  472 U.S. 511 (1985) ...................................................................13

*Nelson v. Weber*,

   No. 16-5680, 2020 U.S. Dist. LEXIS 94426 (W.D. Wash. Feb. 13, 2020)...... 9-10

*Nelson v. Weber*,

   No. 16-5680, 2020 U.S. Dist. LEXIS 93455 (W.D. Wash. May 28, 2020) ..... 9-10

*Patterson v. Randazzo*,

   160 F. Supp. 3d 849 (M.D.N.C. 2016)...................................................................10

*Pearson v. Callahan*,

   555 U.S. 223 (2009) ............................................................... 5, 6, 13, 14

*Plumhoff v. Rickard*,

   572 U.S. 765 (2014) ................................................................ 1, 7, 8, 12

*Richards v. United States*,

   369 U.S. 1 (1962) ............................................................................................12

*Scott v. Harris*,

   550 U.S. 372 (2007) ...................................................................... 5, 13

*Sheehan v. City & Cty. of San Francisco*,

   743 F.3d 1211 (9th Cir. 2014)..............................................................9

*Wilkinson v. Torres*,

   610 F.3d 546 (9th Cir. 2010)................................................ passim

*Wilson v. Layne*,

   526 U.S. 603 (1999) ........................................................................10

*Zion v. City of Orange*,

   874 F.3d 1072 (9th Cir. 2017).............................................................9

**State Cases**

*Hayes v Cty. of San Diego*,

   57 Cal. 4th 622, 636 (2013) ...........................................................12

*Munoz v. City of Union City*,

120 Cal. App. 4th 1077 (2004)..............................................................12

**Federal Statutes**

28 U.S.C. § 1346............................................................................. 1, 12

28 U.S.C. § 2674................................................................................11

**Federal Rules**

Fed. R. Civ. P. 56......................................................................... 4, 14

**Other Authorities**

9B Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure § 2527 (3d ed. 2012) .........................................13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **INTRODUCTION**

The Court has already held that Special Agent (SA) Ronaldo Gonzalez was justified in using deadly force against Fernando Geovanni Llanez on June 16, 2016. *See* Order (ECF 14, at 21-22). That is because at the time of the shooting, Llanez "was involved in a felony drug transaction worth hundreds of thousands of dollars and brandished a taser as he chased after Defendant Gonzalez in an attempt to frustrate his retreat." *Id.* at 21. In response, SA Gonzalez shot Llanez four times. After construing all allegations in Plaintiffs' favor, the Court ruled that they have not shown that the first three shots were unreasonable under the Fourth Amendment. *Id.* at 21-22. The Court left open the possibility that a fourth shot might have been unreasonable because Plaintiffs alleged that the fourth shot was fired into Llanez's back when he was "clearly unarmed," lying face-down on the ground. *Id.* at 22-24. That finding was limited to the then-"present record." *Id.* at 24. Based on that same reasoning, the Court ruled that Plaintiffs also sufficiently alleged an assault and battery claim against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80. *Id.* at 30-31.

Incontrovertible evidence not part of the then-"present record" demonstrates that the fourth shot was also reasonable under the Fourth Amendment and that SA Gonzalez is entitled to qualified immunity. Indeed, an audio recording of the shooting shows that all four shots happened in two seconds. The Supreme Court and the Ninth Circuit have both held that when an officer is justified in using deadly force and the volley of shots occurs in quick succession, the number of shots fired does not turn an otherwise reasonable use of deadly force into an unreasonable one. *See Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014). The Fourth Amendment does not "require[] an officer to reevaluate whether a deadly threat has been eliminated after each shot." *Wilkinson v. Torres*, 610 F.3d 546, 552 (9th Cir. 2010). That precedent requires the same result here on the Fourth Amendment claim *and* the FTCA assault and battery claim. *See* Order (ECF 14, at 30) ("In California, common law claims of

1

assault and battery against law enforcement officers are analyzed under the Fourth Amendment's reasonableness standard.").

Based on the foregoing, SA Gonzalez and the United States move for summary judgment on the following grounds, and pursuant to Federal Rule of Civil Procedure 56(c):

(1) Defendant Gonzalez is entitled to summary judgment on the excessive force claim based on qualified immunity because the evidence shows that his actions did not violate any clearly established Fourth Amendment right; and

(2) The United States is entitled to summary judgment on the assault and battery claim because the evidence shows its conduct is not actionable under California law.[1]

## I.   EVIDENCE GUIDE

Four pieces of evidence support this motion and are attached to the Notice of Lodgment, also filed concurrently herewith:

(1) Exhibit 1: 09/23/2020 Declaration of Ronaldo Gonzalez ("Gonzalez Decl.");

(2) Exhibit 2: 06/20/2016 Interview of Ronaldo Gonzalez ("Gonzalez Interview");

(3) Exhibit 3: 08/31/2020 Declaration of German Burgoin ("Burgoin Decl."); and

(4) Exhibit 4: 06/14/2016 Excerpted Body Wire Recording.

## II.   FACTUAL BACKGROUND

The movants are the United States of America and Special Agent (SA) Ronaldo Gonzalez of the Department of Homeland Security. Plaintiffs are Fernando and Elizabeth Jiminez, parents of the decedent, Fernando Geovanni Llanez. Second Amended Complaint (ECF 15 ¶¶ 3-5). The incident giving rise to this civil suit occurred on June 14, 2016.

---

[1] On this same date, Individual Defendants Lori Giannantonio, Jeffrey Grimming, Juan Munoz, Jeremy Dorn, Michael Burbank, Marcus Osorio, Chris Baroni, Angela Sanchez, Anthony Castellanos, Jacqleen Riley, and Mark Meredith moved to dismiss the excessive force claim because Plaintiffs failed to sufficiently allege their personal participation. Should the Court deny that motion for any one of them, they would also be entitled to summary judgment based on qualified immunity. Indeed, if SA Gonzalez did not commit a clearly established constitutional violation when he used deadly force, there would be no basis to hold any of these defendants secondarily liable for failing to prevent it.

Gonzalez Decl. ¶ 4; (ECF 15 ¶¶ 44-46). At that time, SA Gonzalez was participating in an undercover sting operation and conducting a controlled delivery of approximately 2,000 pounds of marijuana at a shopping center in Chula Vista, California. Gonzalez Decl. ¶ 4; (ECF 15 ¶¶ 12, 20, 22, 33). At approximately 1:56 p.m., five individuals associated with the potential purchaser of the contraband (including Llanez) arrived on the scene. Gonzalez Interview, at 78:18-19, 79:11-12, 80:28 (indicating the time was around 1:45 p.m., and then about fifteen to seventeen minutes later about four guys showed up to inspect the marijuana); Gonzalez Dec. ¶ 5 (affirming that interview statements are truthful and accurate statements of his recall of events); (ECF 15 ¶¶ 20, 42, 44, 60) (alleging that Llanez and his associate arrived on the scene at approximately 1:56 p.m., and at that point there were five "suspects" on the scene).

Shortly after Llanez arrived, SA Gonzalez can be heard on his body wire recording inserting a key into the driver's side door of the drug-laden van and then taking off running. Excerpted Body Wire Recording, at 0:45; Burgoin Decl. ¶ 4 (identifying the Excerpted Body Wire Recording as a true and accurate copy); Gonzalez Decl. ¶ 6; Gonzalez Interview, at 87:2-88:28; (ECF 15 ¶¶ 20, 45-46). Llanez had brandished a weapon (a taser) and was chasing SA Gonzalez. Gonzalez Interview, at 88:15-93:1; (ECF 15 ¶ 46). On the body wire recording, SA Gonzalez can be heard yelling "aaaaa…help!" Excerpted Body Wire Recording, at 0:50; Gonzalez Decl. ¶ 6; (ECF 15 ¶¶ 20, 46-47). SA Gonzalez believed that Llanez had shot him with the "something." Excerpted Body Wire Recording, at 1:33, 2:48, 3:04; Gonzalez Interview 93:3-21; (ECF 15 ¶¶ 51-52). As Llanez continued to pursue him, taser drawn, SA Gonzalez thought he was going to die. Gonzalez Interview, at 95:7-96:3. In response, SA Gonzalez discharged his weapon four times in rapid succession in two seconds. Excerpted Body Wire Recording, at 0:53-0:55; Gonzalez Interview, at 93:23-96:5; (ECF 15 ¶¶ 20, 47-48). SA Gonzalez shot until he felt the threat had stopped, which is when Llanez collapsed. Gonzalez Interview, at 96:12-19 ("After, after the last round that I fired, he, he collapsed.").

The excerpted body wire recording captured the following events:

- 0:45          SA Gonzalez inserts keys into van and then takes off running.
- 0:50          SA Gonzalez screams "aaaaa…help!"
- 0:53          SA Gonzalez fires his first shot.
- 0:55          SA Gonzalez fires his fourth shot.
- 1:03          SA Gonzalez yells "help!" two more times.
- 1:09          Officers pick up SA Gonzalez in their vehicle.
- 1:33          SA Gonzalez says "I think he hurt me. I think he shot me with something . . . a taser."
- 2:48          SA Gonzalez says "he fucking shot me with something dude."
- 3:04          SA Gonzalez says "check my back dude, you see anything?"

Excerpted Body Wire Recording; Gonzalez Decl. ¶ 6.[2]

### III.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "genuineness" inquiry focuses on the sufficiency of the evidence. A genuine dispute of material fact exists where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In applying this standard, the court reviews all evidence in the light most favorable to the nonmoving party. *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1769 (2015). A fact is material, on the other hand, if it may "affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. And so a defendant may carry his or

---

[2] According to the second amended complaint, one bullet struck Llanez's right hand, a second his left hand that entered his right cheek, and a third struck the taser. (ECF 15 ¶ 48); *see also* Gonzalez Interview, at 94:16-27, 95:23-25 (stating that when he shot, Llanez was facing him, with both hands on the taser, belt-level, and pointing the taser as if to shoot; and that he shot at Llanez "center mass"). A fourth bullet entered Llanez's right mid back between the ninth and tenth rib, travelled "sharply upward" through his lung and neck muscle, and lodged in his tongue. (ECF 15 ¶ 20) (quoting the autopsy report).

4

her burden on summary judgment by offering evidence to negate an essential element of the plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 331 (1986). Once the defendant does so, the burden shifts to the plaintiff to produce evidentiary materials demonstrating the existence of a genuine issue of material fact. *Id.* at 324; *Coverdell v. Dep't of Soc. & Heath Servs.*, 834 F.2d 758, 769 (9th Cir. 1987). A plaintiff must carry his or her burden by offering "significant probative evidence tending to support the complaint." *Anderson*, 477 U.S. at 249. A mere scintilla of evidence does not suffice. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978). Finally, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted).

## IV.   QUALIFIED IMMUNITY STANDARD

In individual-capacity suits, "qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations and citation omitted). This protection is "ample." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It shields "all but the plainly incompetent or those who knowingly violate the law," *id.*, and applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (internal quotations omitted). In qualified immunity cases, courts answer two questions: whether the facts alleged show that the defendant's conduct violated a constitutional right, and whether that right was "clearly established" at the time of the events alleged. *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010). Courts can decide which question to answer first. *Pearson*, 555 U.S. at 236. If the facts alleged do not show conduct that violated a constitutional right, or if that right was not clearly established at the time of the events

alleged, the defendant is immune from suit. *Id.* at 243-45. Thus, where additional facts might be needed to decide whether a constitutional right was violated under prong one, a court can skip to prong two without requiring discovery if the right was not clearly established at the time of the alleged violation. *See id.* at 238-39.

## V.   LEGAL ANALYSIS

### A.   DEFENDANT GONZALEZ IS ENTITLED TO SUMMARY JUDGMENT ON THE EXCESSIVE FORCE CLAIM BASED ON QUALIFIED IMMUNITY BECAUSE THE EVIDENCE SHOWS THAT HIS ACTIONS DID NOT VIOLATE A CLEARLY ESTABLISHED FOURTH AMENDMENT RIGHT.

The Court has already held that based on the facts in this case, "Plaintiffs have failed to state a constitutional violation that would support a viable excessive force claim against [SA Gonzalez] with regard to the first three shots he fired at Decedent." (ECF 14, at 20-21). The Court reasoned "that Decedent was involved in a felony drug transaction worth hundreds of thousands of dollars and brandished a taser as he chased after Defendant Gonzalez in an attempt to frustrate his retreat." *Id.* at 21. Thus, the Court concluded that "Plaintiffs have failed to plead facts demonstrating Defendant Gonzalez's use of force in firing his first three shots at Decedent was objectively unreasonable." *Id.* at 22. However, based on the facts alleged, the Court found that Plaintiffs did state a viable excessive force claim against SA Gonzalez with regard to the fourth shot because they allege that at that time, Llanez was unarmed, lying on the ground, and no longer posing a threat. *Id.* The Court's ruling was expressly limited to the then-"present record." *Id.* at 24. But as explained in further detail below, the incontrovertible evidence demonstrates that SA Gonzalez fired all four shots in two seconds. No case law clearly establishes that where the first three shots are reasonable under the Fourth Amendment, a fourth shot a second later is unreasonable such that qualified immunity is denied. In fact, the overwhelming case law, including binding precedent, is all to the contrary, and requires the grant of summary judgment here.

"Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the

6

crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." (ECF 14, at 17-18) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "The most important factor is whether the individual posed an immediate threat to the safety of the officers or others." *Glenn v. Washington Cty.*, 673 F.3d 864, 872 (9th Cir. 2011) (internal quotations omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Finally, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citation omitted).

Based on the *Graham* factors, the Court has already held that the first three shots fired by SA Gonzalez did not violate the Fourth Amendment. *First*, Llanez was involved in a felony drug transaction worth hundreds of thousands of dollars. (ECF 14, at 21). *Second*, at the time of the shooting, Llanez, brandished a taser as he chased after SA Gonzalez in an attempt to frustrate his retreat. *Id.* And while the Court left open the possibility that the fourth shot might have been unreasonable, it did not have the benefit of SA Gonzalez's body wire recording which demonstrates that the fourth shot occurred a second after the first three – Plaintiffs conspicuously omitted that fact from the complaint despite detailing the timing of virtually every other aspect of this shooting.

"It stands to reason that, if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014). In that case, officers shot fifteen rounds at the driver of a fleeing vehicle to put an end to a dangerous car chase. *Id.* at 768, 777. On appeal, the plaintiff argued "that even if the officers were permitted to fire their weapons, they went too far when they fired as many rounds as they did." *Id.* at 775. In finding all fifteen rounds reasonable under the Fourth Amendment, the Supreme Court

emphasized that all shots occurred in a single volley during a ten-second span. *Id.* at 777. As the Court explained, "[t]his would be a different case if petitioners had initiated *a second round of shots* after an initial round had clearly incapacitated [the decedent] and had ended any threat of continued fight. . . . But that is not what happened." *Id.* Moreover, "it was certainly not clearly established at the time of the shooting in this case that the number of shots fired, under the circumstances present here, rendered the use of force excessive." *Id.* at 780.

Here, the case for qualified immunity is all the more justified on this record. Instead of fifteen rounds shot during a ten-second span, SA Gonzalez fired four rounds in two seconds. And like *Plumhoff*, there was no pause and second round of shots. No case law clearly establishes that where the first three shots are deemed reasonable under the Fourth Amendment, a fourth shot within two seconds of the first could be unreasonable such that qualified immunity is denied. This is especially so given that SA Gonzalez was required to make a split-second judgment in a tense and rapidly evolving situation in which he thought he was going to die. His actions cannot be judged in 20/20 hindsight on the premise that he was required to stop and reevaluate whether a fourth shot was necessary.

Indeed, the Ninth Circuit has rejected the notion that the Fourth Amendment "requires an officer to reevaluate whether a deadly threat has been eliminated after each shot." *Wilkinson v. Torres*, 610 F.3d 546, 552 (9th Cir. 2010). As the Ninth Circuit explained, "[s]uch a requirement places additional risk on the officer not required by the Constitution." *Id.* In that case, an officer fired eleven rounds in nine seconds at a moving vehicle that had previously struck another officer. *Id.* at 549. In ruling the use of deadly force reasonable, the court cited a Fourth Circuit case for the proposition that the firing of multiple rounds "does not suggest the officers shot mindlessly as much as it indicates that they sought to ensure the elimination of a deadly threat." *Id.* at 552 (quoting *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996)). The court continued: "[b]ecause we conclude as a matter of law that deadly force was authorized . . . it makes no difference in this case

whether [the officer] fired seven rounds or eleven." *Id.* at 552-53. The *Wilkinson* plaintiff had argued that at least three of the rounds were excessive because they occurred *after* the suspect's vehicle had lost power and thus, the threat had been eliminated. *Id.* at 553. The court rejected that argument, stating that even if true, there was no evidence that the officer was able to "immediately perceive" that the threat had stopped given that all shots happened in quick succession in less than nine seconds. *Id.* The court concluded: "the Fourth Amendment does not require omniscience, and absolute certainty of harm need not precede an act of self-protection." *Id.* (internal quotations and citation omitted); *see also Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1230 (9th Cir. 2014) ("Even if [officers] continued to fire after [the suspect] reached the ground, it is clear from the very brief time that elapsed that [the officers] made a split-second judgment in responding to an imminent threat and fired a fusillade in an emergency situation.") (internal quotations and citation omitted), *reversed on other grounds by City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775 (2015) (agreeing with the Ninth Circuit on that point: "Nothing in the Fourth Amendment barred [officers] from protecting themselves, even though it meant firing multiple rounds."). Where the Ninth Circuit has ruled that additional shots violated the Fourth Amendment, it was because *two volleys* of shots occurred *with a pause* in between. For example, in *Zion v. City of Orange*, 874 F.3d 1072, 1075-76 (9th Cir. 2017), the plaintiff did not challenge the first volley of nine shots when the suspect posed a threat, but did challenge the second volley of fifteen shots when the suspect lay on the ground. Importantly, however, after the first volley, the officer *stopped* shooting, ran ten feet closer to the suspect, and after six full seconds, unloaded another fifteen rounds "at close range" while the suspect lay motionless on the ground. *Id.* at 1075-76. Those are not the facts in this case.[3]

---

[3] District courts are also in agreement that once an officer is justified in using deadly force, that the officer shot an additional round in quick succession does not violate the Fourth Amendment. *See, e.g.*, *Nelson v. Weber*, No. 16-5680, 2020 U.S. Dist. LEXIS 94426, *27 (W.D. Wash. Feb. 13, 2020) ("Because the law is clear that where lethal force is justified, shooting an entire magazine over a few seconds is not less reasonable than shooting a few shots, plaintiffs' argument is unpersuasive."), *adopted in relevant part by* 2020 U.S. Dist.

In fact, in a similar case involving the use of deadly force, one district court explained:

> [The officer] fired all four shots in under two seconds. There is no discernable pause and restart of the shooting. The four shots were fired in swift succession. Plaintiffs' claim that [the officer] should have made a judgment at the halfway mark between one second and the next . . . is asking the Court to view [the officer's] actions with "20/20 vision of hindsight," which is not permissible. Rather, the Court must view [the officer's] actions from the "perspective of a reasonable officer on the scene . . . often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Angilau v. United States*, No. 16-992, 2018 U.S. Dist. LEXIS 39379, *14-15 (D. Utah Mar. 9, 2018) (internal citations omitted). The court ultimately concluded that all four shots were objectively reasonable and did not violate the Fourth Amendment. *Id.* at *16.

Even if the Court disagrees with this unanimous case law, that difference of opinion alone requires the application of qualified immunity. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (where judges disagree on a constitutional question, qualified immunity is "deserve[d]"); *Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("If judges thus disagree on a

---

LEXIS 93455 (W.D. Wash. May 28, 2020); *Estate of Green v. City of Indianapolis*, 420 F. Supp. 3d 816, 827 (S.D. Ind. 2019) ("But when all shots are fired in one quick volley, the number of shots fired does not affect the qualified-immunity analysis."); *Del Castillo v. City of Tempe*, No. 14-1945, 2016 U.S. Dist. LEXIS 161037, *8 (D. Ariz. Nov. 18, 2016) ("Given the fast pace and escalation of the encounter, [the officer] did not have time to evaluate whether each additional shot was necessary. His use of deadly force was objectively reasonable, and the Court finds that the number of rounds fired is immaterial."); *Dasho v. City of Fed. Way*, No. 12-1398, 2015 U.S. Dist. LEXIS 79556, *25-26 (W.D. Wash. June 17, 2015) ("[W]hen faced with a tense, uncertain, rapidly evolving, and dangerous situation such as the one that existed here, an officer may reasonably fire a volley of shots at a threatening suspect, even if some of those shots are fired as the suspect falls to or lies on the ground."); *J.P. v City of Porterville*, 801 F. Supp. 2d 965, 987 (E.D. Cal. 2011) ("In this quickly evolving situation, that some of the shots may have hit [the suspect] as he was slumping or had dropped is not sufficient to show excessive force."); *Patterson v. Randazzo*, 160 F. Supp. 3d 849, 863-64 (M.D.N.C. 2016) (collecting additional cases).

constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.").[4]

The Fourth Amendment's reasonableness standard grants officers ample room to use deadly force until a serious and immediate threat to their safety has stopped and does not require absolute certainty or omniscience under perilous circumstances. *Wilkinson*, 610 F.3d at 552. And even if the Fourth Amendment somehow required something more under the facts of this case, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014) (per curiam) (internal quotations and citation omitted). Based on the foregoing, SA Gonzalez is entitled to qualified immunity under both prongs of the analysis.[5]

**B.    THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT ON THE ASSAULT AND BATTERY CLAIM BECAUSE THE EVIDENCE SHOWS THAT ITS CONDUCT IS NOT ACTIONABLE UNDER CALIFORNIA LAW.**

Under the FTCA, "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Further, "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against

---

[4] In the only apparent case in which a court held that an additional round fired in quick succession violated the Fourth Amendment, the court ultimately concluded that the officer was still entitled to qualified immunity. It was not clearly established that shooting a falling suspect violates the Fourth Amendment when "immediately before" the last shot, the officer was justified in using deadly force. *See Abuka v. City of El Cajon*, No. 17-89, 2019 U.S. Dist. LEXIS 37137, *23-26, *29-31 (S.D. Cal. Mar. 7, 2019).

[5] The description of Llanez's injuries provides further support for SA Gonzalez's statement that Llanez did not fall until *after* all four shots. As Plaintiffs allege, three shots occurred while Llanez was facing SA Gonzalez: one striking his left hand and lodging in his right cheek, one striking his right hand, and one striking the taser. (ECF 15 ¶ 48). A fourth shot entered his back, travelling "sharply upward" and lodging in his tongue. *Id.* ¶ 20. It is unlikely, if not impossible, that Llanez went from an upright, front-facing, *threatening* position to a flat-on-the-ground, back-facing, *non-threatening* position in less than a second – and certainly not to the point where it was clearly established that SA Gonzalez could or should have appreciated that fact.

the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission . . . if a private person would be liable to the claimant in accordance with the law of the place." 28 U.S.C. § 1346(b)(1). The Supreme Court has "consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State – the source of substantive liability under the FTCA." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994) (citations omitted). Here, because the events occurred in California, California law applies. *See Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) (citing *Richards v. United States*, 369 U.S. 1, 7 (1962)).

The Court has already held that the Fourth Amendment's reasonableness standard controls the question of whether an assault and battery occurred under California law and likewise limited the assault and battery claim to whether the fourth shot here was reasonable. (ECD 14, at 30-31) (citing *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 n.6 (2004), *overruled on other grounds as stated in Hayes v Cty. of San Diego*, 57 Cal. 4th 622, 636 (2013); *Avina*, 681 F.3d at 1131). Thus, for the same reasons why SA Gonzalez's fourth shot was reasonable under the Fourth Amendment, the fourth shot also did not constitute an assault or battery under California law. And while qualified immunity does not apply to FTCA claims, that does not matter for purposes of granting summary judgment in favor of the United States here. That is because the Supreme Court in *Plumhoff* and the Ninth Circuit in *Wilkinson* both held that once the use of deadly force is justified, the number of rounds fired in a single volley does not affect the Fourth Amendment's reasonableness analysis. *See* 572 U.S. at 777-78 (holding that petitioner's conduct did not violate the Fourth Amendment); 610 F.3d at 554 ("Because we conclude that [the officer] did not violate a constitutional right, we need not reach the question of whether that right was clearly established."). That same reasonableness analysis plainly applies here to defeat the assault and battery claim as well.

\*                          \*                          \*

"[T]he purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990). To oppose this motion, it is not enough for Plaintiffs to disbelieve the evidence presented herein. *See* 9B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2527 (3d ed. 2012) ("If all of the witnesses deny that an event essential to the plaintiff's case occurred, the plaintiff cannot get to the jury simply because the jury might disbelieve these denials. There must be some affirmative evidence that the event in question actually occurred."). It is also not enough for Plaintiffs to speculate that Llanez was shot when he no longer posed a threat. "Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. But no affirmative evidence will change precedent holding that once an officer is justified in using deadly force, the firing of one additional round in quick succession does not turn a reasonable use of deadly force into an unreasonable one. And no affirmative evidence will change the incontrovertible audio showing that that is *precisely* what happened here: all four shots occurred in two seconds. *See Scott*, 550 U.S. at 380 (plaintiff cannot overcome summary judgment by asserting facts "blatantly contradicted by the record"). In light of the foregoing, Plaintiffs simply cannot carry their burden of proving that Llanez's clearly established constitutional rights were violated or that an assault or battery occurred under California law.

Moreover, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, the Supreme Court has repeatedly emphasized that lower courts must resolve the threshold legal question of qualified immunity *before* subjecting government officials to discovery. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009); *Pearson*, 555 U.S. at 231-32; *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). As the

Court explained, "*the driving force* behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved *prior to discovery*." *Pearson*, 555 U.S. at 231-32 (internal quotations and citation omitted) (emphasis added). That protection is lost when officials must participate in discovery bearing on the merits of a claim where the incontrovertible evidence fails to show a clearly established violation. Thus, the Court should not hesitate to grant this summary judgment motion notwithstanding the current procedural posture. There is no good reason to force SA Gonzalez and the United States into lengthy discovery when nothing will change the audio recording demonstrating that the fourth shot in the same volley here was reasonable. And while qualified immunity does not apply to FTCA claims, the Federal Rules of Civil Procedure are broad enough to grant courts ample discretion to enter summary judgment prior to allowing any discovery at all. *See* Fed. R. Civ. P. 56(b) (a party may move for summary judgment "at any time until 30 days after the close of all discovery"); *see also* Committee Notes on Rules – 2009 Amendment ("The new rule allows a party to move for summary judgment at any time, even as early as the commencement of the action.").

## VI.   CONCLUSION

This motion does not require the Court to revisit the question of whether the circumstances justified the use of deadly force in the first place. The Court already ruled that SA Gonzalez was justified in firing his weapon based on the serious threat Llanez posed and that is now the law of the case. The sole question here is once deadly force *is* justified, does an additional round in the same volley a split second later turn a reasonable use of force into an unreasonable one. The answer is no. The Court should accordingly grant the motion for summary judgment, enter judgment in favor of SA Gonzalez on the excessive force claim (Count Two) and the United States on the FTCA assault and battery claim (Count Three), and end this case.

DATED: September 29, 2020                              Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General,
Civil Division

ROBERT S. BREWER, JR.
United States Attorney
Southern District of California

C. SALVATORE D'ALESSIO, JR.
Acting Director
Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel
Torts Branch, Civil Division

s/ Siegmund F. Fuchs
SIEGMUND F. FUCHS
Senior Trial Attorney
Torts Branch, Civil Division

Attorneys for the Federal Defendants