1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   ELIZABETH JIMINEZ, individually,        Case No.  3:18-cv-01269-BTM-AGS
     and as successor in interest of
12   Fernando Geovanni Llanez,               **ORDER GRANTING**
     deceased; FERNANDO LLANEZ,              **DEFENDANTS' MOTION FOR**
13   individually, and as successor in       **SUMMARY JUDGMENT AND**
     interest of Fernando Geovanni           **DENYING PLAINTIFFS' REQUEST**
14                                           **TO SET ASIDE DISMISSAL**
     Llanez, deceased,
15

16                              Plaintiffs,

17    v.                                     **[ECF NOS. 25, 35]**

18

19   UNITED STATES OF AMERICA;
     CITY OF CHULA VISTA, a public
20   entity; RONALDO RICARDO
     GONZALEZ, an individual;
21   MARCUS OSORIO, an individual;
     CHRIS BARONI, an individual;
22   ANGELA SANCHEZ, an individual;
     MICHAEL BURBANK, an
23   individual; JEREMY DORN, an
     individual; ANTHONY
24   CASTELLANOS; an individual,
     MARK MEREDITH, an individual;
25   DOES 1-100, inclusive,
26

27

28                              Defendants.

Before the Court is the United States of America and Ronaldo Gonzalez's Motion for Summary Judgment.  (ECF No. 25 ("Mot.").)  For the reasons set forth below, the Court **GRANTS** Defendants' Motion.  The Court also **DENIES** Plaintiffs' Request to Set Aside Dismissal (ECF No. 35).

## I. <u>BACKGROUND</u>

On June 14, 2016, the Department of Homeland Security ("DHS") conducted an undercover operation involving the controlled delivery of approximately 2,000 pounds of marijuana in a shopping center in Chula Vista, California.  (ECF No. 25-2, Exh. 1, Declaration of Ronaldo Gonzalez, ¶ 4; ECF No. 33, Ex. A, Enforcement Operation Plan.)  As part of the operation, undercover officers loaded a van with marijuana and transported it to a pre-arranged location for pickup by potential buyers.  (ECF No. 33, Ex. C, Chula Vista Police Department Officer Report.)

At the pre-arranged pickup location, one of the undercover officers, Defendant Ronaldo Gonzalez, a Special Agent at U.S. Immigration and Customs Enforcement ("ICE"), met four or five individuals who were near the van.  (*See* Gonzalez Decl. ¶ 4; ECF No. 25-2, Exh. 2, Interview of Ronaldo Gonzalez, at 13-14; ECF No. 33, Exh. C, at 3.)  Defendant Gonzalez engaged in conversation with the individuals and offered to give them access to a bundle of marijuana that had already been opened, which was located inside the van near the driver's side door.  (ECF No. 25-2, Exh. 2, at 16-17.)

According to a June 20, 2016 Chula Vista Police Department interview of Defendant Gonzalez, as he was putting the van key into the driver's side door to unlock it, he heard "a commotion," and in his peripheral vision, approximately six or seven feet away, "s[aw] somebody chasing another guy. . . [a]s if to kick him or hit him."  (*Id.* at 19-20.)  At that moment, Defendant Gonzalez believed that the situation was "a rip," meaning he believed the individuals were going to "injure [him] or take [him] out of the picture in order for them to steal the van with the drugs."  (*Id.* at 21.)  Defendant Gonzalez then saw one of the individuals, Fernando

Geovanni Llanez ("Llanez"), "coming towards [him] rapidly," holding a "black and yellow handheld weapon" that Defendant Gonzalez believed was a "firearm." (*Id.* at 20, 22.)  In response, Defendant Gonzalez "quickly stepped towards the front of the vehicle." (*Id.* at 24.)  Defendant Gonzalez looked back and saw that Llanez was "pointing the weapon at [him]," which Llanez then fired. (*Id.* at 24-25.) Defendant Gonzalez "wasn't sure if [he] was shot" but believed "something hit [him] in [his] back," that felt like "a stone hitting [his] back." (*Id.* at 25.)  Defendant Gonzalez believed that Llanez was going to "hit [him] again," and that "because it was an open parking lot," "if [Llanez] was going to shoot [him] again, it wouldn't have been very difficult for him to do so because there was no cover." (*Id.*) Defendant Gonzalez turned to face Llanez, dropped to his right knee, withdrew his handgun, and pointed it at Llanez. (*Id.* at 25-26.)  When Defendant Gonzalez was pointing his handgun at Llanez, he saw that Llanez's weapon "was still pointed at [him]," and that Llanez's "finger was on the trigger." (*Id.* at 26-27.)  Defendant Gonzalez "thought [he] was go[ing] to die." (*Id.* at 27.)  Defendant Gonzalez shot Llanez four times from approximately seven or eight feet away. (*Id.*)  The four shots occurred within approximately two seconds. (*See* ECF No. 25-2, Exh. 4, Body Wire Recording.)  Approximately eight seconds elapsed between when Defendant Gonzalez inserted the key into the van and when he discharged his firearm. (*See* ECF No. 25-2, Exh. 1, ¶ 6; ECF No. 25-2, Exh. 4.)  After Llanez had collapsed, "it set in [for Defendant Gonzalez] that [Llanez's weapon] may have been a taser." (ECF No. 33, Exh. B, at 33.)

Plaintiffs, the parents of decedent Llanez, in their Second Amended Complaint, brought claims under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), as well as wrongful death/survival claims based on assault and battery and negligence. (ECF No. 15.)  On July 8, 2021, the Court dismissed all of Plaintiffs' claims except for Plaintiffs' shooting-related excessive force claim against Defendant Gonzalez and

assault and battery claims against the United States.  (ECF No. 34.)  Defendants seek summary judgment on these remaining claims.  (ECF No. 25.)  The Court heard oral argument on July 21, 2021.  (ECF No. 39.)

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial.  *Id.* at 322–23.  Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains.  *Celotex*, 477 U.S. at 314.  When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

//

//

//

4

### III.  **DISCUSSION**

### A.  **Plaintiffs' Excessive Force Claim against Defendant Gonzalez**

In the Court's June 1, 2020 order, the Court dismissed Plaintiffs' excessive force claim against Defendant Gonzalez with regard to the first three shots he fired at Llanez because: (a) "Plaintiffs admit[ted] that Decedent was involved in a felony drug transaction worth hundreds of thousands of dollars and brandished a taser as he chased after Defendant Gonzalez in an attempt to frustrate his retreat"; (b) "Plaintiffs themselves allege[d] that each of the initial three shots resulted in 'non-fatal injuries'"; and (c) "Plaintiffs fail[ed] to plead facts that would allow for an inference that there was sufficient time for Defendant Gonzalez to make [an announcement identifying himself as a law enforcement officer or warning Decedent before discharging his firearm] before the initial volley given Decedent's armed pursuit."  (ECF No. 14 at 20-22.)  However, the Court held that Plaintiffs had "stated a viable excessive force claim against Defendant Gonzalez as to the fourth shot he fired at Decedent because the shot was allegedly fired into Decedent's back while he was unarmed and lying face-down on the ground."  (*Id.* at 22.)

Under the doctrine of qualified immunity, government officials are protected "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity attempts to balance two important interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Because qualified immunity is an immunity from suit, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Id.* at 231–32.  To determine whether a police officer is entitled to

qualified immunity, a court must consider whether: (1) the officer's conduct violated a constitutional right; and (2) that right was clearly established at the time of the incident. *Id.* at 232. Courts are not required to address the two questions in any particular order. *Id.* at 243.

### i. Whether the Fourth Shot Violated the Fourth Amendment

Under the Fourth Amendment, police may use "only such force as is objectively reasonable under the circumstances." *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994). Whether the force used by an officer was excessive, and thus an unreasonable seizure in violation of the Fourth Amendment, is determined by balancing "the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In weighing governmental interests, the Ninth Circuit has typically considered: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Green v. City & County of San Francisco*, 751 F.3d 1039, 1050 (9th Cir. 2014). "Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "Although it is undoubtedly true that police officers are often forced to

make split-second judgments . . . it is equally true that even where some force is justified, the amount actually used may be excessive." *Santos*, 287 F.3d at 853 (internal citation and quotation omitted).

The Court has already dismissed Plaintiffs' claims related to Defendant Gonzalez's first three shots, which occurred in the context of a high-value felony drug transaction and the brandishing of a taser by Llanez at Defendant Gonzalez. (*See* ECF No. 14 at 20-22.)  In their Second Amended Complaint, Plaintiffs allege that: **(a)** "[Llanez] approached the van and met [Defendant Gonzalez] at approximately 1:56 P.M. on June 14, 2016" and "[a]t this time five individuals from the potential purchaser of the contraband were present," (ECF No. 15, ¶ 44); **(b)** "[w]hen [Llanez] arrived to pick up the van, [Defendant Gonzalez] went to open the door of the van and instantly ran away from the van with the only set of keys. . . . [Llanez] gave chase to recover the keys and drew a taser to stop the fleeing individual," (*id.* ¶ 20); **(c)** "[Defendant Gonzalez] went to unlock the driver's door of the van when he suddenly took the only set of keys and ran around the front of the van and approximately 50 feet away from all other individuals standing near the van," and Llanez "drew the taser while running after [Defendant Gonzalez]" and "was attempting to stop him from stealing the only set of keys to the van," (*id.* ¶ 46); and **(d)** "[t]he first three shots fired by [Defendant Gonzalez] hit [Llanez] in a finger of his left hand," "the top of the Taser," and "in the web of flesh between his thumb and index finger of his right hand," "[a]ll of which were non-fatal injuries," (*id.* ¶ 48).  The Court construes Plaintiffs' allegations in their Second Amended Complaint as judicial admissions.  *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them."); *Hakopian v. Mukasey*, 551 F.3d 843, 846

(9th Cir. 2008) ("Allegations in a complaint are considered judicial admissions.").

Further, Defendants have submitted evidence that prior to the shooting: **(a)** Defendant Gonzalez was in the proximity of four to five suspects, (*see* ECF No. 25-2, Exh. 2, at 13-14; ECF No. 33, Exh. C, at 3); **(b)** as Defendant Gonzalez was inserting the key into the van, he heard "a commotion," "s[aw] somebody chasing another guy. . . [a]s if to kick him or hit him," and believed the situation was "a rip," and that the other suspects were going to "injure [him] or take [him] out of the picture in order for them to steal the van with the drugs," (ECF No. 25-2, Exh. 2, at 19-20); **(c)** Defendant Gonzalez saw Llanez "coming towards [him] rapidly," holding a "black and yellow handheld weapon" that Defendant Gonzalez believed was a "firearm," (*id.* at 20, 22); **(d)** Defendant Gonzalez saw that Llanez was "pointing the weapon at [him]," and then believed "something hit [him] in [his] back," (*id.* at 24-25); **(e)** Defendant Gonzalez believed that Llanez was going to "hit [him] again," (*id.* at 25); **(f)** when Defendant Gonzalez pointed his firearm at Llanez, he saw that Llanez's weapon "was still pointed at [him]," that Llanez's "finger was on the trigger," and that he "thought [he] was go[ing] to die," (*id.* at 26-27); and **(g)** approximately eight seconds elapsed between when Defendant Gonzalez inserted the key into the van and when he discharged his firearm, (*see* ECF No. 25-2, Exh. 1, ¶ 6; ECF No. 25-2, Exh. 4).   The record establishes that prior to the shooting, Defendant Gonzalez was in a tense, uncertain, and rapidly evolving situation, and that he reasonably believed that Llanez posed a threat of significant bodily harm or death so as to justify an initial use of deadly force.  *See Corrales v. Impastato*, 650 F. App'x 540, 541 (9th Cir. 2016) (undercover officer did not violate the Fourth Amendment when he failed to issue a pre-firing warning and shot a suspect five times in three seconds, in the context of an undercover drug deal where the suspect "rushed toward [the officer] while pulling his previously concealed hand from his waistband and forming it into a fist with a single, hooked finger extended in an attempt to scare [the officer] into believing that [he] had a gun") (internal

quotation omitted).  The Court does not revisit its prior ruling regarding the first three shots or the pre-shooting conduct, and only addresses the reasonableness of Defendant Gonzalez's fourth shot.

Defendant Gonzalez argues that he is entitled to summary judgment on Plaintiffs' excessive force claim because the fourth shot was reasonable as a matter of law, due to the temporal proximity of the fourth shot to the first three non-fatal shots.  (Mot. at 1.)  Defendant Gonzalez submits a declaration from himself, as well as audio from his body wire recorded at the time of the incident, which demonstrate that the four shots were all discharged in a single volley within two seconds.  (*See* ECF No. 25, Exh. 1-4.)  In opposition to the motion for summary judgment, Plaintiffs submit a June 15, 2016 Chula Vista Police Department Officer Report by David Marshall, who interviewed witness Rachel Murphy, and noted the following:

> During the course of the interview she explained how just a few moments before the shooting she and her daughter drove into the shopping center, parked their car and walked into the nail salon.  R. Murphy said they were standing at the salon counter trying to get an appointment to have their nails done when she heard, "Pop, Pop!"  She determined she had just heard gunshots so she stepped back and leaned out the front door of the business and looked in the direction of the old Albertson's grocery store building to see what had happened. R. Murphy further described she saw a man standing with his legs slightly spread, his arms extended down holding a handgun.  She said the male was still shooting.  She demonstrated what she saw and while seated, she extended her arms out in front of her and pointed in a downward direction, clasped her hands together (as if making a gun with her hands) and simulated shooting towards someone laying on the ground.  R. Murphy estimated she saw him fire approximately three bullets.

(ECF No. 33, Exh. K, at 1-2.)

Viewing the evidence in a light most favorable to Plaintiffs, the Court does not find that there are genuine disputes of material fact regarding whether Defendant Gonzalez's fourth shot violated Llanez's Fourth Amendment rights.  The

judicial admissions derived from Plaintiffs' Second Amendment Complaint and Defendants' submitted evidence set forth the following facts: **(a)** the shooting took place during a high-value felony drug transaction involving approximately four to five suspects; **(b)** when Defendant Gonzalez ran from the van with the keys, Llanez chased after him while brandishing a taser; **(c)** Defendant Gonzalez perceived Llanez pointing a weapon at him, with his finger on the trigger; **(d)** Defendant Gonzalez perceived that there was no cover and feared for his life; **(e)** Defendant Gonzalez fired four rapid shots, within a timespan of approximately two seconds, at Llanez; and **(f)** approximately eight seconds elapsed between when Defendant Gonzalez inserted the key into the van and when he discharged his firearm. Rachel Murphy's statement that she witnessed Defendant Gonzalez firing in a downward direction, with the inference that Defendant Gonzalez fired the fourth and fatal shot at Llanez while he was lying on the ground, does not create a triable dispute as to any of the above material facts.  The record reflects that Defendant Gonzalez was forced to make a split-second judgment in a tense, uncertain, and rapidly evolving circumstance, and his fourth and final shot—which was fired as part of a single volley that ended within two seconds—was reasonable.  *See Plumhoff v. Rickard*, 572 U.S. 765, 777-78 (2014) (officers' "conduct did not violate the Fourth Amendment," where a total of fifteen shots were fired during a ten second span, because "if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended"); *Wilkinson v. Torres*, 610 F.3d 546, 449-551 (9th Cir. 2010) (officer "did not violate a constitutional right" where he fired eleven rounds in less than nine seconds at a driver in a moving minivan backing up in the direction of another officer); *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1216, 1230 (9th Cir. 2014) (it was reasonable for officers to shoot a knife-wielding individual "five or six times," including shooting a final shot where the individual "had already reached the ground"); *Smith v. Cty. of Riverside*, 2018 WL

5880610, at *6-7 (C.D. Cal. June 15, 2018) (where officers "fired eight shots between them, seven shots in one volley and an eighth shot fired nine or ten seconds after the first seven shots," plaintiffs "failed to raise a genuine issue of material fact as to whether the first volley of shots constituted excessive force" because the decedent was "armed with *something*" and "lunged at [an officer] who was three or four feet from him") (emphasis in original).

ii.   Whether the Fourth Shot Violated Clearly Established Law

While the Court holds that Defendant Gonzalez's fourth shot was reasonable under the Fourth Amendment, even assuming that it was not, the Court holds that he is protected by qualified immunity, as there was no clearly established law at the time of the shooting that put Defendant Gonzalez on notice that his actions violated Llanez's rights.

The Supreme Court has held that an officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate." *City & Cnty. Of San Francisco v. Sheehan*, 575 U.S. 600 (2015) (citations omitted). "[C]learly established law should not be defined at a high level of generality," but instead "must be particularized to the facts of the case." *White v. Pauly*, –––– U.S. ––––, 137 S. Ct. 548, 552 (2017). A court denying qualified immunity must effectively "identify a case where an officer acting under similar circumstances as [the defendant officer] was held to have violated the Fourth Amendment." *Id.* "This exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Sheehan*, 575 U.S. at 611 (citations omitted). "It is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (internal citation and quotation omitted).

Plaintiffs' opposition to Defendants' Motion identifies no case law for the Court to address in its qualified immunity analysis. (*See* ECF No. 32.)  However, in *Zion v. Cty. of Orange*, the Ninth Circuit recognized that "[i]f police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended," but cautioned that "terminating a threat doesn't necessarily mean terminating the suspect," because "[i]f the suspect is on the ground and appears wounded, he may no longer pose a threat" and "a reasonable officer would reassess the situation rather than continue shooting."  874 F.3d 1072, 1076 (9th Cir. 2017).  There, an officer fired an initial round of nine shots that caused the suspect to fall to the ground, and after a pause, ran to where the suspect had fallen and fired a second round of nine shots at close range while the suspect was still lying on the ground.  *Id.* at 1075.  The Ninth Circuit denied qualified immunity for a Fourth Amendment excessive force claim as to the second volley of shots, as "[a] reasonable jury could find that [after the first volley, the suspect] was no longer an immediate threat, and that [the officer] should have held his fire unless and until [the suspect] showed signs of danger or flight."  *Id.* at 1076.  Here, however, the facts are readily distinguishable from *Zion*, as Defendant Gonzalez's fourth shot occurred in a single volley within a span of two seconds, with no discernable pause between the third and fourth shot, and where Defendant Gonzalez's initial use of deadly force was justified by a rapidly evolving felony drug transaction involving multiple suspects and Llanez brandishing a taser at Defendant Gonzalez.  Even assuming that Llanez had fallen to and was lying on the ground within the first three shots, the two second total time span of the single volley was too short for Defendant Gonzalez to plausibly have been able to perceive that Llanez was no longer a threat in the split second between the third and fourth shot.  Plaintiffs have failed to identify any, and the Court has found no clearly established legal authority where an officer acting in similar circumstances to Defendant Gonzalez was found to have violated the Fourth Amendment.  The

Court holds that Defendant Gonzalez is entitled to qualified immunity on Plaintiffs' Fourth Amendment excessive force claim.   Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on this claim.

## B.  Plaintiffs' FTCA Claim against the United States

Plaintiffs' remaining claim seeks to hold the United States liable under the Federal Tort Claims Act ("FTCA") for Defendant Gonzalez's alleged assault and battery related to the fourth shot.  In California, common law claims of assault and battery against law enforcement officers are analyzed under the Fourth Amendment's reasonableness standard.  *See Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 n. 6 (2004), *overruled on other grounds as stated in Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 636 (2013); *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012) ("In California, claims that police officers used excessive force in the course of an arrest, investigatory stop or other seizure of a free citizen are analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution.") (internal quotations, citations, and alterations omitted).  Qualified immunity, however, is inapplicable to such state-law claims.  *See Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) (reversing grant of summary judgment on qualified immunity grounds to defendant officers and county on state law claims of assault and battery arising from alleged use of excessive force); *Scruggs v. Haynes*, 252 Cal. App. 2d 256, 257 (1967) (police officers do not have discretionary immunity under Cal. Gov't Code § 820.2 from liability for the use of unreasonable force in making an arrest); *see also* 28 U.S.C. § 2680(h) (waiver of sovereign immunity for claims arising out of assault and battery by an investigative or law enforcement officer).

Defendants' motion for summary judgment on Plaintiffs' FTCA claim is premised on the assumption that Defendant Gonzalez's fourth shot was reasonable under the Fourth Amendment.  (*See* Mot. at 12.)  As discussed above, the Court holds that it was.  Accordingly, and for the same reasons, the Court

**GRANTS** Defendants' Motion for Summary judgment on Plaintiffs' FTCA claim.

### IV. PLAINTIFFS' MOTION TO SET ASIDE DISMISSAL

Plaintiffs initially failed to file a timely opposition to Defendants' Motion for Summary Judgment.  On June 22, 2021, the Court issued an order reopening the briefing schedule, and permitting Plaintiffs to file an opposition by July 7, 2021. (ECF No. 31.)  The order specifically stated that "[n]o further briefing [would be] permitted . . . for Defendants' two pending motions to dismiss." (*Id.* at 2.)  On July 8, 2021, the Court issued an order granting Defendants' two motions to dismiss. (ECF No. 34).  The same day, Plaintiffs filed their opposition to Defendants' Motion for Summary Judgment (ECF Nos. 32, 33), as well as a Request to Set Aside Dismissal (ECF No. 35), explaining that their counsel experienced delays in timely filing their opposition to the Motion for Summary Judgment due to counsel's attendance at a funeral and technical issues with filing.  (*Id.* at 1-2.)  However, Plaintiffs fail to identify the legal basis on which they base their request.  Further, the justifications Plaintiffs offer relate only to why their opposition to Defendants' Motion for Summary Judgment was not timely filed, and bear no relation to Defendants' Motions to Dismiss and the Court's Order granting the Motions to Dismiss.  Accordingly, the Court **DENIES** Plaintiffs' Request to Set Aside Dismissal.

//
//
//
//
//
//
//
//
//

## V. CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment (ECF No. 25) is **GRANTED**.  The Court also **DENIES** Plaintiffs' Request to Set Aside Dismissal (ECF No. 35).

The Court previously dismissed all other claims by Plaintiffs, granting them leave to file an amended complaint related to Llanez's handcuffing and any failure to promptly seek medical attention.  (*See* ECF No. 34 at 14.)  Plaintiffs were required to file an amended complaint by August 7, 2021, and the Court stated that "Plaintiffs are warned that their failure to file an amended complaint on or before this date may result in the final dismissal of all claims dismissed by way of this Order without further notice."  (*Id.*)  To date, Plaintiffs have not filed an amended complaint.

Because none of Plaintiffs' claims remain, this case is dismissed.  The Clerk shall enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

Dated: September 14, 2021

Honorable Barry Ted Moskowitz
United States District Judge

3:18-cv-01269-BTM-AGS